Brant JOHNSON, N.D. "Pete" Hayward, George Fisher, Kennard V. Anderson, A. Ross Horsley, Robert E. Limb, Ira Schoppman, S. Rigby Wright, Steve Brown, Jay Herbert, Joe Richie, Val Bess, Ted Peacock, Cal Gillen, Jim Wold, Joe Hutchings, Gordon Kiesel, Julian Greene, Dave Campbell, Ferris Groll, and Darrin Green, Plaintiffs and Appellees,

v.

UTAH STATE RETIREMENT BOARD, a statutory board, Utah State Retirement Office, an independent state agency, and Bert D. Hunsaker, an individual, Defendants and Appellants.

No. 20734.

Supreme Court of Utah.

Sept. 19, 1988.

Rehearing Denied Oct. 20, 1988.

David L. Wilkinson, Mark A. Madsen, Salt Lake City, for defendants and appellants.

Gordon L. Roberts, Randy L. Dryer, Salt Lake City, for plaintiffs and appellees.

DURHAM, Justice:

Defendants seek reversal of the lower court's decree permanently enjoining them from applying or attempting to apply a 1985 amendment of the Utah Public Safety Retirement Act[1] (the Act) to plaintiffs in such a manner as to eliminate, postpone, or reduce payment of plaintiffs' retirement benefits. Plaintiffs are employed as sheriffs and chiefs of police by public safety organizations in the state of Utah and have been members of the Utah Public Safety Retirement System (PSRS).

Pursuant to a 1983 amendment of the Act, plaintiffs opted to exclude themselves from PSRS coverage. They continued to serve in the same positions with their respective public safety organizations. By virtue of their voluntary exclusion from PSRS and having requested and qualified for retirement under the guidelines set up by the Utah State Retirement Office, plaintiffs were entitled to receive retirement benefits as "retirants" while simultaneously collecting salaries for their services as peace officers. The specific statutory provision by which plaintiffs elected exemption from PSRS stated:

> [The Utah Public Safety Retirement Act] shall include in its coverage all public employees engaged full time in public safety work, as herein set forth, except a public employee serving as the commissioner of public safety, or as the elected or appointed sheriff or chief of police of a public safety organization, if that public employee files a formal written request seeking exclusion from coverage.

Utah Code Ann. § 49–11–1 (Interim Supp. 1983) (amended 1985; amended 1987, current version codified at Utah Code Ann. § 49–4–205 (Supp.1987)).

The Utah State Retirement Office advised plaintiffs that they could, in accordance with the 1983 amendment, exempt themselves from coverage under the Act and that if they qualified for retirement, they could receive retirement benefits and continue in their jobs. Plaintiffs followed the application procedures established by the Retirement Office and were approved for retirement.[2] As of their effective re-

---

1. The Utah Public Safety Retirement Act, formerly codified at Utah Code Ann. §§ 49–11–1 to –49 (1981), was amended and recodified at Utah Code Ann. §§ 49–4–101 to –801 (Supp.1987; Interim Supp.1988). 1987 Utah Laws ch. 1, §§ 85–105.

2. Two of the plaintiffs were not approved because they applied after the passage of the 1985 amendment but before its effective date. However, defendants agreed to treat all plaintiffs similarly for purposes of this action.

tirement dates, they began receiving retirement allowances computed according to a statutory formula. Payments have been made regularly since the respective date of each plaintiff's "retirement" under the amendment.

In 1985, the legislature amended the 1983 exclusion provision, adding the following language: "[B]ut the public employee cannot continue employment in the same covered employer unit and receive payment from the retirement office at the same time." Utah Code Ann. § 49–11–1 (Supp. 1985) (amended 1987, current version codified at Utah Code Ann. § 49–4–205 (Supp. 1987)). After this legislation became effective, the Utah State Retirement Board advised plaintiffs that they must either terminate their present employment, withdraw their requests for exemption, transfer their employment to a different employer unit and continue to draw both salary and retirement benefits, or suffer termination of their monthly retirement payments. Plaintiffs thereupon brought this suit. For the reasons below, we affirm the lower court's decree.

 Defendants do not claim that fully vested rights to pension benefits may be freely altered by subsequent legislation. The law on this issue is well settled.[3] Rather, defendants argue that no rights to retirement payments vested in plaintiffs as a result of the 1983 amendment because that legislation did not "intend" to allow such a result. Alternatively, defendants contend that irrespective of any vested rights obtained through the earlier amendment, the 1985 amendment properly applies to plaintiffs because it provides a substantial substitute for the benefits now being received. We disagree.

A fundamental principle of statutory construction is that unambiguous language in the statute itself may not be interpreted so as to contradict its plain meaning. *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 449, 57 S.Ct. 298, 300, 81 L.Ed. 340 (1937) (where statutory language is clear, its meaning cannot be affected by resort to the legislative history); *United States v. Richards*, 583 F.2d 491, 495 (10th Cir.1978) ("Legislative history as an aid in determining the intent of Congress is permissible only if the statute is ambiguous."); *Jensen v. Intermountain Health Care, Inc.*, 679 P.2d 903, 906 (Utah 1984) (best indicator of legislative intent is the statute's plain language); *State v. Archuletta*, 526 P.2d 911, 912 (Utah 1974) (in the absence of ambiguity, there is nothing to construe). There is nothing ambiguous in the language of the 1983 amendment. The language specifically excepts from the Act's coverage "a public employee serving as ... the elected or appointed sheriff or chief of police of a public safety organization" if the employee requests exclusion. The language is precise and clear.

Defendants cite no specific legislative history to demonstrate that the legislature considered the ramifications of voluntary exemption by sheriffs and chiefs of police who continue in the same position after requesting exclusion when it enacted the 1983 amendment. Instead, defendants argue that the legislative intent is implicit in provisions of the Act that prohibit member employees from receiving pension benefits while simultaneously drawing a salary for services rendered in a position covered by PSRS.[4] These provisions are not relevant, however, because the legislature clearly and unambiguously permitted plaintiffs to be removed entirely from the scope of the Act. That public servants not entitled to voluntary exclusion from the operation of the Act are proscribed from collecting

---

**3.** *See Newcomb v. Ogden City Pub. School Teachers' Retirement Comm'n*, 121 Utah 503, 517, 243 P.2d 941, 948 (1952) ("Legislature may not provide for the termination of a retirement system unless a substantial substitute is provided...."); *Driggs v. Utah State Teachers Retirement Bd.*, 105 Utah 417, 430, 142 P.2d 657, 663 (1943) ("'[W]hen the conditions arise or occur upon which ... employees become eligible for retirement ...[,] then the said officers or em-

ployees have acquired a vested right under the terms of said statute which establishes a contractual relation which may not be affected or adversely altered by subsequent enactments.'").

**4.** *See* Utah Code Ann. § 49–11–37 (1981) (amended 1987, current version codified at Utah Code Ann. § 49–4–801 (Supp.1987)).

simultaneous salary and pension payments does not create an ambiguity in the language of the 1983 amendment and does not preclude a different result for those employees not bound by the Act.

In *Driggs v. Utah State Teachers Retirement Board*, 105 Utah 417, 142 P.2d 657 (1943), this Court stated that "a construction will be given a statute so that its purpose will be accomplished" only "if that can be reasonably done"; furthermore, "pension statutes are liberally construed in favor of the pensioner." *Id.* at 431–32, 142 P.2d at 663. The interpretation defendants would have us give the language of the 1983 amendment is as confused and unreasonable as it is oppressive to plaintiff pensioners. Defendants would have us construe the 1983 amendment so as to achieve the same effect as if the 1985 addition had been enacted two years earlier. Under this proposed interpretation, plaintiffs would still be able, under the 1983 amendment, to elect exclusion from the Act, but some of that statute's strictures would nevertheless be selectively enforced against them. Specifically, defendants would have us "read into" their already questionable interpretation of the statute's language an unwritten provision whereby the restriction against concurrent salary and pension payments could be avoided by voluntarily excluded sheriffs and chiefs of police who are willing to relocate to a new employing organization (preferably in a locality experiencing a high need for top law enforcement personnel). All this, defendants suggest, should be judicially added to the simple language of the 1983 amendment by a process of statutory construction. We decline to do this. If the legislature did not intend to exempt employees such as plaintiffs from the restrictions and requirements of the Act, it should not have enacted language that does precisely that.

■ Defendants' second argument—that irrespective of plaintiffs' vested pension rights, application of the 1985 amendment to them would provide a substantial substitute for any lost benefits and is therefore permissible—also fails. Defendants argue that the 1985 amendment, by merely delaying the pension benefits until after completion of services or relocation to another employing organization, does not diminish the benefits plaintiffs will receive; they contend that actuarial adjustments will result in larger payments later on, compensating for any lost periods. This argument ignores the increased risk associated with delay that pensioners would be assuming under the modified plan. It makes the questionable assumption that the time value of money is irrelevant to plaintiffs' ultimate gross receipts. Most importantly, it oversimplifies the choice placed before plaintiffs and fails to consider the possibility that plaintiffs may have already relied to their detriment on the immediate availability of these pension funds.

A substantial substitute for affected pension rights requires more than merely providing an "adequate" retirement system in place of an existing agreement; the substitute plan must not adversely affect the employee's vested rights. *See Newcomb*, 121 Utah at 516, 243 P.2d at 947 (State could not enact legislation to modify existing pension plan where "in no way was the [modified] system a *substitute* for the [existing system] but instead was an *additional* system...." (emphasis added)).

Plaintiffs have a vested right under the 1983 amendment to receive pension benefits irrespective of their current employment status because plaintiffs complied fully with the requirements and conditions for exclusion from PSRS. *See Driggs*, 105 Utah at 434, 142 P.2d at 664. The 1985 amendment, if it were applied, would not allow *any* pension benefits to plaintiffs under their current working conditions. The 1985 amendment adds the requirement that plaintiffs leave their current employers in order to receive the *exact same benefit* to which they have a vested right under the 1983 amendment. Without a showing that such an arbitrarily interjected requirement is necessary to maintain the actuarial soundness of the PSRS and without an offsetting or compensating increase in benefits under the 1985 amendment, plaintiffs' vested rights in the continuing pension payments cannot be impaired. *See Newcomb*, 121 Utah at 513, 243 P.2d at 946.

This Court has held that where pension rights are concerned, "when a person has accepted an offer of the State or one of its agencies, and has met all the conditions thereof, the State or agency is bound to perform the contract the same as a private person must perform." *Newcomb*, 121 Utah at 516, 243 P.2d at 947. The State made an offer to plaintiffs through the 1983 amendment. The offer was clearly communicated. The Retirement Office established the requirements and conditions of application for exclusion which plaintiffs satisfied, thereby accepting the State's offer. The resulting contract entitles plaintiffs to pension benefit payments while continuing to work in the same jobs. The State may not rescind or modify its offer after it has been accepted and all conditions have been satisfied. The decree of the trial court is affirmed.

HALL, C.J., STEWART and ZIMMERMAN, JJ., concur.

HOWE, Associate Chief Justice (dissenting):

I dissent. I agree that the State cannot eliminate or reduce the amount of a retiree's benefit after retirement because his right to that amount has become vested by virtue of his years of service. *Driggs v. Utah Teachers Retirement Bd.*, 105 Utah 417, 142 P.2d 657 (1943). However, I would not under the facts of the instant case extend the concept of vested rights to eligibility for reemployment in public employment after an employee retires. The Utah Public Safety Retirement Act, under which the plaintiffs earned their right to retirement, has always provided since its enactment in 1969 that a retired member may not be reemployed full time in a position covered by that system without having his retirement either cancelled or suspended for the duration of such employment. Utah Code Ann. § 49-4-801 (1981, Supp. 1987). Thus, during the years that the plaintiffs rendered their service to their public employer, drawing a salary and also receiving retirement was specifically prohibited. When the legislature amended the Retirement Act in 1983 so as to permit double payment to persons in the plaintiffs' positions, it was a gratuitous act and conferred something which the plaintiffs had not earned or relied upon in rendering their service. They had already qualified for (but had not applied for) their retirement before the 1983 amendment became law.

In three prior cases decided by this Court, *Schofield v. Zion's Co-op Mercantile Institution*, 85 Utah 281, 39 P.2d 342, 96 A.L.R. 1083 (1934), *Driggs v. Utah Teachers Retirement Bd.*, 105 Utah 417, 142 P.2d 657 (1943), and *Newcomb v. Ogden City Public School Teachers' Retirement Comm'n*, 121 Utah 503, 243 P.2d 941 (1952), we held that vested rights to a pension arise when an employer makes an offer to an employee that if the latter will faithfully work for a required number of years and make contributions to a retirement fund from his salary, he will receive a pension after retiring, and the employee accepts that offer by fulfilling all of its conditions. We explained that a contract comes into being, binding the employer to perform as promised. In the instant case, there was no promise of post-retirement employment extended to the employees while they were earning their rights to their pensions. In fact, such employment was expressly prohibited by statute. The majority does violence to the contract concept in the instant case and exalts to a vested right something which was not part of the employer's offer during the years when the plaintiffs rendered their services.

It is true that the passage of the 1983 amendment may have induced the plaintiffs to "retire," but in doing so, they gave up nothing. They kept their employment with its full salary and also received full retirement benefits. After the repeal of the 1983 amendment in 1985, they were given the option to keep either their employment or their retirement, but not both. They were put back to their original status. No damage was done them, and they were not asked to repay any money received during the two years when they drew both a salary and retirement benefits.

The majority cites no case law to support its position that a retiree can have a vested

right to reenter public employment. The only case relied upon by the plaintiffs, *State ex rel. McLean v. Retirement Bd.,* 161 Ohio St. 327, 119 N.E.2d 70 (1954), involved a retiree who earned his retirement under statutes which placed no restriction on post-retirement employment. That is not true in the instant case, as I have pointed out.

It is quite common for public retirement systems to place some restriction on retirees reentering public employment covered by the system. See Utah Code Ann. § 49–2–801 (1981, Supp.1987) of the Public Employees' Retirement Act (covering most state employees), which provides that a retiree who reenters public employment covered by that Act may earn only up to the amount of exempt earnings permitted by the federal social security laws and that if a retiree receives compensation in a calendar year in excess of that limitation, his retirement payments shall be suspended during the remainder of the calendar year. The broad holding of the majority which extends vested rights to continue in or reenter public employment after retirement may well hamper the legislature from increasing or expanding the limitation should it ever choose to do so.