Marjorie ALLISEN, Plaintiff and Appellee,

v.

AMERICAN LEGION POST NO. 134, Defendant and Appellant.

AMERICAN LEGION POST NO. 134, Third–Party Plaintiff and Appellant,

v.

STATE of Utah, DEPARTMENT OF TRANSPORTATION; Clearfield City, a municipal corporation; Utah Power and Light Company, a Utah corporation, Third–Party Defendants and Appellees.

No. 880031.

Supreme Court of Utah.

Oct. 28, 1988.

807

Barry Gomberg, Ogden, for American Legion Post No. 134.

James R. Hasenyager, Ogden, for Marjorie Allisen.

Robert H. Henderson, Salt Lake City, for Clearfield City.

Paul Proctor, Salt Lake City, for Utah Power and Light Co.

David L. Wilkinson, William F. Bannon, Stephen J. Sorenson, Salt Lake City, for State, Dept. of Transp.

HALL, Chief Justice:

This case is before us on appeal from an interlocutory order denying a motion to dismiss brought by American Legion Post No. 134 ("American Legion"). We reverse and remand for entry of an order dismissing the case against American Legion.

On January 30, 1985, Wesley Harju was served approximately six light beers over a period of several hours on the premises of American Legion in Clearfield, Utah. It is undisputed that on the day in question, American Legion owned a license to sell light beer only and that Harju consumed no other alcoholic beverages.

Marjorie Allisen was crossing the street on foot when she was struck and severely injured by a car driven by Harju within minutes after Harju had left American Legion's premises. Harju's blood alcohol content at the time of the accident was .14 percent.

Allisen sued American Legion under the Utah Dram Shop Act. American Legion filed a third-party complaint against third-party defendant Utah Power and Light for negligent design and maintenance of a utility pole and against third-party defendants Utah Department of Transportation and Clearfield City for negligent design and maintenance of the intersection where the accident occurred. American Legion asked for contribution by third-party defendants in the event it was found liable. In lieu of an answer to Allisen's complaint, American Legion then filed its motion to dismiss the complaint on the ground that the Dram Shop Act did not apply to the sale and consumption of light beer. The third-party defendants likewise filed their motions to dismiss American Legion's actions against

them. The trial court ruled that the Dram Shop Act applied to light beer, but that American Legion had no cause of action for contribution against third-party defendants. Consequently, it granted third-party defendants' motion for dismissal but denied American Legion's motion.

On appeal, American Legion contends that the version of the Utah Dram Shop Act in effect at the time of the accident did not apply to those who provided light beer as defined by the Utah Liquor Control Act, Utah Code Ann. title 32. We agree and therefore find it unnecessary to reach other issues raised by American Legion.

■■■■ The Utah Dram Shop Act ("the 1981 Act") in effect in January 1985, Utah Code Ann. § 32–11–1 (Supp.1981) (repealed 1985), provides:

(1) Any person who gives, sells, or otherwise provides intoxicating liquor to another contrary to subsection 16–6–13.-1(8)(d),[1] subsection 32–1–36.5(1)(1),[2] section 32–7–14,[3] or subsection 32–7–24(b) or (c),[4] and thereby causes the intoxication of the other person, is liable for injuries in person, property, or means of support to any third person, or the spouse, child, or parent of that third person, resulting from the intoxication.

(2) A person who suffers an injury referred to in subsection (1) of this section, shall have a cause of action against the intoxicated person and the person who provided the intoxicating liquor in violation of subsection (1) above, or either of them.

(3) If a person having rights or liabilities under this section dies, the rights or liabilities provided by this section shall survive to or against that person's estate.

The Act prohibits the sale of intoxicating liquor to minors, persons actually, apparently, or obviously drunk, known habitual drunkards, known interdicted persons, and persons under the influence of liquor. The Liquor Control Act in effect at the time, Utah Code Ann. § 32–1–3 (Supp.1977) (repealed 1985), defined liquor [5] and specifically excluded from that term light beer, defined as beer containing not more than 3.2 per centum of alcohol by weight. Utah Code Ann. § 32–1–3 (Supp.1977) (repealed 1985). Even when reenacted with amendments in 1985, the Utah Dram Shop Act ("the 1985 Act") still suffered from the same distinctions between those providing liquor and those providing light beer. "By its terms, the 1985 version of the act exempted sellers or providers of beer such as taverns and retail grocery stores from Dram Shop liability while imposing liability on private clubs and restaurants providing wine or mixed drinks." [6] In other words, Dram Shop liability was not expanded by the 1985

---

1.  Utah Code Ann. § 16–6–13.1(8)(d) (Supp.1983) (repealed 1985) prohibited social clubs with state liquor stores on the premises from selling *liquor* or *wine* to minors, persons actually, apparently, or obviously drunk, any known habitual drunkards, and any known interdicted persons.

2.  Utah Code Ann. § 32–1–36.5(*l*)(1) (Supp.1969) (repealed 1985) prohibited restaurants with state liquor stores on their premises from selling *liquor* or *wine* to minors, persons actually, apparently, or obviously drunk, any known habitual drunkards, and any known interdicted persons.

3.  Utah Code Ann. § 32–7–14 (1974) (repealed 1985) forbade the sale or supply of alcoholic beverages to persons under or apparently under the influence of *liquor*.

4.  Utah Code Ann. § 32–7–24 (1974) (repealed 1985) prohibited (b) the consumption of *liquor* by a person apparently under the influence of *liquor* on the premises of an owner, tenant, or occupant and (c) the giving of *liquor* to a person apparently under the influence of *liquor*.

5.  "Liquor" means and includes alcohol or any alcoholic, spirituous, vinous, fermented, malt, or other liquid or combination of liquids, a part of which is spirituous, vinous, or fermented, and all other drinks or drinkable liquids, containing more than one-half of one per centum of alcohol by weight; and all mixtures, compounds or preparations, whether liquid or not, which contain more than one-half of one per centum of alcohol by weight, and which are capable of human consumption; except that the term "liquor" shall not include ."light beer."
Utah Code Ann. § 32–1–3 (Supp.1969) (repealed 1985).

6.  Note, *Utah Dram Shop Act Amendments*, 1 Utah L.Rev. 304, 307 (1987) (authored by Jeremy Mark Hoffman).

Act and was therefore the same as under the 1981 Act.

Contrary to Allisen's response that the legislature could not have intended such absurd results, both the language of the statute and the legislative history point to an express exemption of light beer providers from liability under the 1981 Act. Where statutory language is plain and unambiguous, this Court will not look beyond to divine legislative intent. Instead, we are guided by the rule that a statute should be construed according to its plain language.[7] The statute's plain language holds providers of intoxicating *liquors* liable for injuries a person under the influence of intoxicating liquors may inflict. Intoxicating liquors do not include light beer, and the 1981 Act therefore expressly exempts providers of light beer from liability for injuries caused through intoxication from light beer.

Recent legislative history underscores the limitations just stated. After the repeal of the 1981 Act and the enactment of the 1985 Act, the Citizens' Council on Alcoholic Beverage Control[8] submitted its annual report and recommendation to the Utah legislature.[9] The Council expressed concern that the language in the Dram Shop Act limited liability to providers of liquor and exempted providers of beer. It then recommended that the statute be amended to encompass all "alcoholic beverages."[10] The Act, as amended in 1986, now provides for liability of all providers of alcoholic beverages, and alcoholic beverages expressly include light beer.

■ We take no position on Allisen's claim that she should be able to proceed against American Legion on a common law

negligence theory because the issue is not before us. Allisen's complaint was brought under the Dram Shop Act, and the district court limited its ruling to the Dram Shop Act applicability.

We hold that the 1981 Act did not include light beer in the definition of "intoxicating liquors" and that Allisen's complaint against American Legion for liability under the Dram Shop Act must therefore be dismissed. The order of the trial court is reversed, and American Legion is dismissed from the case.

HOWE, Associate C.J., and STEWART, J., concur.

ZIMMERMAN, Justice (dissenting):

I dissent from the opinion reversing and remanding this case without argument. The Court takes the view that it is "plain and unambiguous" that the phrase "intoxicating liquor," which appeared in the 1981 version of Utah's Dram Shop Act, *see* Utah Code Ann. § 32–11–1(1), (2) (Supp.1981), means the same thing as "liquor" in the 1985 and 1986 versions, *see* Utah Code Ann. § 32A–14–1(1), (2) (Supp.1985); *id.* (1986), and carries with it the obscure distinctions between "liquor" and "alcoholic beverages" contained elsewhere in the Code. *See, e.g.,* Utah Code Ann. § 16–6–13.1 (Supp.1983); *id.* § 32–1–3 (Supp.1977); *id.* § 32–1–36.5 (Supp.1969); *compare, e.g., id.* § 32–7–14 *with* § 32–7–24 (1974). I do not find this to be apparent. It seems just as likely that the purpose of the 1985 amendment was to free those who sell or serve what is misnomered "light" beer from their Dram Shop liability under the 1981 law[1] and that the 1986 amendment was only a minor retreat

---

**7.** See *Johnson v. Utah State Retirement Board,* 91 Utah Adv.Rep. 8 (9/19/88).

**8.** The Citizens' Council is a seven-member bipartisan council created by statute and empowered to consider, investigate, and inquire into all matters related to the liquor laws of the state. Utah Code Ann. §§ 32A–1–22 through –25 (1986).

**9.** Citizens' Council on Alcoholic Beverage Control, Report and Recommendation to the Utah Legislature (1985).

**10.** *Id* at 9.

**1.** Every amendment not expressly characterized as a clarification carries the rebuttable presumption that it is intended to change existing legal rights and liabilities. See 1A N. Singer, *Sutherland on Statutory Construction* § 22.30 (Sands 4th rev. ed. 1985).

from the 1985 position. For even though the 1986 amendment exposed those who serve beer for consumption on-premises to liability, it preserved the immunity of grocery stores and convenience stores, the latter of which often sell gasoline and alcohol together at the same stand. However ridiculous it may appear to exempt these vendors of alcohol from Dram Shop Act liability, especially in light of Utah's otherwise strong declared public policy against drunk driving, that certainly is the effect of the 1985 and 1986 amendments. But I see no reason to look to the statute's evisceration in 1985 for guidance on the original meaning of the 1981 version.

The heart of the 1981 version of the Dram Shop Act is its imposition of liability on those who sell or otherwise provide "intoxicating liquor." Nothing in the 1981 version shows a plain intent that the term "intoxicating liquor" should have the same meaning as the term "liquor" used in the later versions, which imports with it the rather arcane and, some would argue, objectively rather absurd distinctions used in Utah's laws regulating the sale of alcohol. It seems as likely, if not more so, that the term "intoxicating liquor" should be read as "intoxicating beverage." The broad purpose of dram shop acts in general—to compel those who sell intoxicants to do so with care, upon pain of incurring tort liability—is certainly not furthered in any way by importing distinctions that may have been drawn by the legislature between various kinds of intoxicants for other purposes. A drink may be "intoxicating" and may result in the harms to which the Dram Shop Act was directed without regard to whether it contains more than 3.2 percent alcohol by volume. Nothing indicates that the legislature, in passing the 1981 Act, had any such narrow and artful distinctions in mind. In fact, given this state's general policies regarding the sale and consumption of alcohol, there is every reason to assume that the 1981 legislature had the broadest purpose of a dram shop act in view when it passed the original statute.

In the absence of clear legislative intent indicating otherwise, I would construe the 1981 Dram Shop Act as covering all intoxi-

cating beverages. The fact that sellers of "light" beer were somehow able to persuade the legislature to free them from liability under the Dram Shop Act in 1985 and to preserve much of that immunity in 1986 in no way convinces me that the legislature intended to grant them that immunity when it passed the initial statute.

DURHAM, J., concurs in the dissenting opinion of ZIMMERMAN, J.