**MILLER WELDING SUPPLY, INC., Petitioner,**

v.

**UTAH STATE TAX COMMISSION, AUDITING DIVISION, Respondent.**

**No. 930119–CA.**

Court of Appeals of Utah.

Sept. 2, 1993.

David O. Black (argued), Richard W. Black, Black, Jensen, Stith & Argyle, Salt Lake City, for petitioner.

Jan Graham, State Atty. Gen., John McCarrey (argued), Asst. Atty. Gen., Salt Lake City, for respondent.

Before BILLINGS, JACKSON and RUSSON, JJ.

JACKSON, Judge:

Miller Welding Supply, Inc. (Miller Welding) appeals a decision by the Utah State Tax Commission (Tax Commission) upholding the assessment of a sales tax on Miller Welding's sales of oxygen concentrators. We reverse.

## FACTS

Miller Welding provides oxygen concentrators to medically dependent individuals. The oxygen concentrator is an engineered device that draws oxygen from the surrounding air, concentrates it, and delivers it to the patient at a prescribed rate. The device cannot be obtained without a medical prescription and is an alternative to the concentrated oxygen in the familiar green bottles.

The Tax Commission audited Miller Welding for the period of April 1, 1987, to December 31, 1989. During this time period, Miller Welding sold oxygen concentrators to patients pursuant to physician's prescriptions without collecting sales tax, based on its interpretation of the sales tax exemption for medical "oxygen." The auditor disagreed with Miller Welding's interpretation and assessed Miller Welding with sales tax and interest along with a ten percent penalty in connection with the oxygen concentrators sold during the time period in question. Miller Welding filed a petition for redetermination with the Tax Commission and the Tax Commission determined the oxygen concentrators were not exempt from sales tax.

## ANALYSIS

██ Miller Welding asserts the Tax Commission improperly found the oxygen concentrators do not have sales tax exempt status. Specifically, Miller Welding asserts that the Tax Commission improperly interpreted a statute exempting the sale of medicine from sales tax, which defines medicine as, among other things, "any oxygen ... prescribed by a physician." *See* Utah Code Ann. § 59–12–102(4)(a)(iii) (1987). We apply a correction of error standard, giving no deference to the Tax Commission's interpretation of the statute in question. Utah Code Ann. § 59–1–610(1)(b) (Supp. 1993).

██ Utah Code Ann. § 59–12–104(10) (1987) provides that the "sale of medicine" is exempt from sales tax. Section 59–12–102(4)(a)(iii) defines "medicine" as "any oxygen or stoma supplies prescribed by a physician or administered under the direction of a physician or paramedic." When statutory language is plain and unambiguous, we will not look beyond the language to determine legislative intent. *Sneddon v. Graham,* 821 P.2d 1185, 1187 (Utah App.1991). However, when the statutory language is ambiguous, we will attempt to discern the intention of the legislature. *Id.* "A statute is ambiguous if it can be understood by reasonably well-informed persons to have different meanings." *Id.* (quoting *Tanner v. Phoenix Ins. Co.,* 799 P.2d 231, 233 (Utah App. 1990)). The statutory language "any oxygen ... prescribed by a physician" is ambiguous because it has more than one potential meaning. For a definition of "oxygen," we refer to a dictionary that had been published and was in use in 1981 when the legislature added the word "oxygen" to the statute as an exemption. There, the word "oxygen" is defined as "an element that is found free as a colorless tasteless odorless gas in the atmosphere." *Webster's New Collegiate Dictionary* (8th ed. 1973). The statutory meaning of "oxygen" in this statute is likely not the same as the dictionary meaning. A physician does not prescribe oxygen that is pervasive

and free to every human being. Rather, a physician prescribes oxygen in a concentrated form that brings relief to patients medically dependent on concentrated oxygen.

Further, prescribed concentrated oxygen can mean the concentrated oxygen purchased in a bottle or the concentrated oxygen used by a patient through a delivery device, which is prescribed by a physician. The concentrated oxygen purchased in the familiar green bottles and the oxygen provided by the oxygen concentrator are both oxygen prescribed by a physician. When a patient receives a prescription for oxygen, the patient can choose to fill that prescription by purchasing the bottled oxygen or purchasing an oxygen concentrator. Both fill the same purpose and are medicine from the physician's point of view. When oxygen is needed the patient can turn on a valve from either source and receive the same prescribed concentrated oxygen.

■ Because the statutory phrase "any oxygen . . . prescribed by a physician" is ambiguous, we turn to legislative intent to determine its meaning. The clear purpose of Utah Code Ann. § 59–12–104(10) is to relieve those required to take prescribed medicine from the burden of having to pay sales tax on that medicine. The transcript of the senate discussion regarding sales tax exemptions for oxygen shows that the legislature intended to extend the definition of medicine to the *"use of oxygen,"* not just "oxygen" and not just the use of concentrated oxygen from a green bottle. Senator Swan, the sponsor of the bill exempting oxygen from sales tax stated that this bill "extends the definition of medicine practically to the use of oxygen." Senate Floor Discussion of SB 53 (from recording of January 20, 1981 session).

■ In light of this legislative purpose, it is inconsistent to argue that the legislature would exempt the use of prescribed concentrated oxygen purchased in a bottle, but would not exempt the use of prescribed concentrated oxygen produced by an oxygen concentrator. We believe the legislature intended that patients should be relieved from paying sales tax when purchas-

ing prescribed medicine, whether patients use oxygen provided by oxygen concentrators or oxygen provided in green bottles.

## CONCLUSION

The Tax Commission's ruling assessing sales tax on Miller Welding's sales of oxygen concentrators is erroneous because oxygen concentrators fall under "any oxygen . . . prescribed by a physician" Accordingly, we reverse.

BILLINGS, J., concurs.

RUSSON, Associate Presiding Judge (dissenting):

I respectfully dissent because I disagree with the majority's interpretation and application of Utah Code Ann. §§ 59–12–104(10) and 59–12–102(4)(a)(iii) (1992). The plain and unambiguous language of those sections provides that the sale of medicine is entitled to a sales tax exemption, and that although oxygen is included within the purview of the term "medicine," oxygen concentrators are not.

When examining the language of sections 59–12–104(10) and 59–12–102(4)(a)(iii), this court is required to adhere to the long-standing rule that exemptions are to be strictly construed against the taxpayer and in favor of the Tax Commission. *Hales Sand & Gravel, Inc. v. Utah State Tax Comm'n,* 842 P.2d 887, 890–91 (Utah 1992); *see also Parson Asphalt Prods., Inc. v. Utah State Tax Comm'n,* 617 P.2d 397, 398 (Utah 1980) ("Even though taxing statutes should generally be construed favorable to the taxpayer and strictly against the taxing authority, the reverse is true of exemptions. Statutes which provide for exemptions should be strictly construed, and one who so claims has the burden of showing his entitlement to the exemption." (footnotes omitted)). Following that rule, this court and the supreme court have consistently held that exemptions which are neither clearly included nor excluded by section 59–12–104 should be given a construction favorable to the Tax Commission, resulting in a determination that no exemp-

tion should be granted under that section. *See, e.g., Hales Sand & Gravel, Inc.*, 842 P.2d at 890 (construing Utah Code Ann. § 59–12–104(18) (1987) as implicitly limiting the tax imposed on "common carriers" under Utah Code Ann. § 59–12–103 (1987)); *Nucor Corp. v. Utah State Tax Comm'n*, 832 P.2d 1294 (Utah 1992) (upholding the Tax Commission's determination that "purchased for resale" under Utah Code Ann. § 59–12–104(28) (1987) means purchased for the *primary purpose* of resale and that incidental use of the items in petitioner's product does not fit within the exemption); *Morton Int'l, Inc. v. Utah State Tax Comm'n*, 814 P.2d 581 (Utah 1991) (upholding Tax Commission's interpretation and application of Utah Code Ann. § 59–12–104(15) and (16) (Supp.1987)); *Putvin v. Utah State Tax Comm'n*, 837 P.2d 589 (Utah App.1992) (upholding Tax Commission's determination that petitioner was a resident for sales tax purposes under Utah Code Ann. § 59–12–104(9) (1992)). These cases compel the same result in the case at bar.

Turning now to the interpretation and application of Utah Code Ann. §§ 59–12–104(10) and 59–12–102(4)(a)(iii) (1992), it is well settled that "[w]hen statutory language is plain and unambiguous, we do not look beyond the same to divine legislative intent." *Hatton–Ward v. Salt Lake City Corp.*, 828 P.2d 1071, 1072 (Utah App.) (citing *Brinkerhoff v. Forsyth*, 779 P.2d 685, 686 (Utah 1989); *State v. Singh*, 819 P.2d 356, 359 (Utah App.1991), *cert. denied*, 832 P.2d 476 (Utah 1992)), *cert. denied*, 843 P.2d 1042 (Utah 1992); *accord Allisen v. American Legion Post No. 134*, 763 P.2d 806, 809 (Utah 1988); *Sneddon v. Graham*, 821 P.2d 1185, 1187 (Utah App. 1991), *cert. denied*, 843 P.2d 516 (Utah 1992). "Rather, we construe a statute according to its plain language." *Hatton–Ward*, 828 P.2d at 1072 (citing *Brinkerhoff*, 779 P.2d at 686); *accord Allisen*, 763 P.2d at 809. "Specifically, we will not interpret unambiguous language in a statute to contradict its plain meaning." *Hatton–Ward*, 828 P.2d at 1072 (citing *Bonham v. Morgan*, 788 P.2d 497, 500 (Utah 1989) (per curiam); *Johnson v. Utah State Retire-*

*ment Bd.*, 770 P.2d 93, 95 (Utah 1988)). Additionally, in interpreting unambiguous statutes, we "assume[ ] that each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *Savage Indus., Inc. v. Utah State Tax Comm'n*, 811 P.2d 664, 670 (Utah 1991) (footnote omitted). Thus, each term "should be interpreted and applied according to its usually accepted meaning, where the ordinary meaning of the term results in an application that is neither unreasonably confused, inoperable, nor in blatant contradiction of the express purpose of the statute." *Morton Int'l, Inc.*, 814 P.2d at 590 (footnote omitted).

The statutes in the case at bar are not ambiguous. Utah Code Ann. § 59–12–104 (1992) states:

> The following sales and uses are exempt from the taxes imposed by this chapter:
>
> . . . . .
>
> (10) sales of medicine. . . .

That section is further clarified by Utah Code Ann. § 59–12–102(4)(a) (1992), which specifically provides:

> "Medicine" means:
>
> (i) insulin, syringes, and any medicine prescribed for the treatment of human ailments by a person authorized to prescribe treatments and dispensed on prescription filled by a registered pharmacist, or supplied to patients by a physician, surgeon, or podiatrist;
>
> . . . . .
>
> (iii) any oxygen or stoma supplies prescribed by a physician or administered under the direction of a physician or paramedic.

Assuming that each term in the statute was used advisedly, *see Savage Indus., Inc.*, 811 P.2d at 670, we interpret and apply the term "oxygen" according to its usually accepted meaning, unless such reading results in an application that is unreasonably confused, inoperable, or in blatant contradiction of the express purpose of the statute. *Morton Int'l, Inc.*,

814 P.2d at 590; *Savage Indus., Inc.*, 811 P.2d at 670. "Oxygen," according to its usually accepted meaning, is defined as "[a] colorless, tasteless, odorless, gaseous element that is essential to life and required for combustion." *Webster's II New Riverside Dictionary* 503–04 (1984). The application of this definition of "oxygen" in the statute here is neither unreasonably confused, inoperable, nor in blatant contradiction of the express purpose of the statute. Moreover, this definition clearly includes the product that is bottled in the familiar green bottle. In fact, it is disingenuous to argue, as the majority does, that simply because physicians do not prescribe "oxygen that is pervasive and free to every human being," the concentrated form of oxygen in the green bottle, which is nonetheless a "colorless, tasteless, odorless, gaseous element," *id.*, does not fit within the common usage of the term "oxygen," and therefore, the statute is ambiguous.[1] Such reading of the statute is clearly contrary to the rule that unambiguous language in a statute should not be interpreted to contradict its plain meaning. *See Hatton–Ward*, 828 P.2d at 1072; *Johnson*, 770 P.2d at 95. Accordingly, strictly construing the exemption in the case at bar, *see Hales Sand & Gravel, Inc.*, 842 P.2d at 890, this court should hold that, under the plain language of section 59–12–102(4)(a)(iii), only "oxygen," as provided by the express terms of the statute, is exempted, and that a device that produces oxygen, such as the oxygen concentrator in the case at bar, which is not covered by the statute's specific terms, is not subject to exemption.

Additionally, the evidence presented by Miller relating to the purpose and function of the oxygen concentrator, by its own plain language, takes such device out of the purview of Utah Code Ann. § 59–12–102(4)(a)(iii) (1992). That evidence describes the oxygen concentrator as an "engineered device that draws oxygen from the air" and states that it "processes oxygen." Clearly, something that draws oxygen from the air and processes it cannot itself be considered "oxygen." Thus, an oxygen concentrator is excluded from the statute in question not only by the common usage definition of "oxygen," but also by its own definition.[2]

Because the application of the common usage definition of "oxygen" in the statute here is neither unreasonably confused, inoperable, nor in blatant contradiction of the express purpose of the statute, *see Morton Int'l, Inc.*, 814 P.2d at 590, the majority errs in reaching the legislative intent issue here. "Where statutory language is plain and unambiguous, [Utah appellate courts] will not look beyond the same to divine legislative intent." *Brinkerhoff*, 779 P.2d at 686 (Utah 1989); *accord Bonneville Int'l Corp. v. Utah State Tax Comm'n*, 858 P.2d 1045, 1049 (Utah App.1993). As demonstrated above, neither of the statutes in the present case is ambiguous. Accordingly, it is improper to resort to legislative intent here.

Moreover, even if it were proper to reach the legislative intent question, such analysis supports the Tax Commission, and not Miller as the majority mistakenly concludes. Prior to the addition of the language concerning stoma supplies, the proposed language of Utah Code Ann. § 59–12–102(4)(a)(iii) (1992) stated that only "oxygen" was covered. The terms "any" and "stoma supplies" were subsequently added to that subsection, so that it read, "any oxygen or stoma supplies prescribed by a

---

**1.** Additionally, it is interesting to note that although the eighth edition of *Webster's Dictionary*, cited by the majority, defined oxygen as "an element that is found free as a colorless tasteless odorless gas in the atmosphere," the most recent edition of that dictionary deleted the phrase "found free" and revised it to read: "a colorless tasteless odorless gaseous element that constitutes 21 percent of the atmosphere...." *Merriam–Webster's Collegiate Dictionary* 832 (10th ed. 1993).

**2.** The majority additionally errs in concluding that "the legislature intended to extend the definition of medicine to the '*use* of oxygen'...." Such statement is in direct contradiction of section 59–12–104(10), which specifically states that the exemption applies only to the "sale," not the use, of medicine. *See* Utah Code Ann. § 59–12–104(10) (1992).

physician or administered under the direction of a physician or paramedic...." The addition of those terms fails to establish that the legislative intent was to use the term "any" to extend the definition of "oxygen" to include a device that produces oxygen at a prescribed rate to patients needing oxygen.[3]

Furthermore, to extend the statute to include machines that produce oxygen, in addition to "oxygen" as provided by the statute, could potentially open the floodgates of litigation, emasculating the general rule that exemptions are to be liberally construed in favor of the Tax Commission. *See Hales Sand & Gravel, Inc.,* 842 P.2d at 890; *Parson Asphalt Prods., Inc.,* 617 P.2d at 398. For example, since Utah Code Ann. § 59–12–104(1) (1992) provides an exemption from the taxes imposed by that chapter for "the sales of motor fuels," apparently, under the majority's analysis, a machine that produces such motor fuels, such as the equipment needed to run an oil well, will also be entitled to an exemption. Similarly, since Utah Code Ann. § 59–12–104(5) (1992) provides for an exemption for "sales of parts and equipment installed in aircraft operated by common carriers in interstate or foreign commerce," evidently, under the majority's view, any common carrier who buys a machine that produces parts for installation in its aircraft does not have to pay sales tax on the purchase of such a machine. Or, since Utah Code Ann. § 59–12–102(4)(a)(i) (1992) states that the term "medicine," as used in section 59–12–104(10) includes "insulin, syringes, and any medicine prescribed for the treatment of human ailments," under the rule set forth by the majority in this case, if a patient decides to buy a machine that produces one of the above items, instead of buying the item itself, that patient need not pay sales tax. In other words, the logical extension of the majority opinion is that any machine that produces something listed under sections 59–12–104 or 59–12–102(4) would be subject to a sales or use tax exemption.

This is simply not the legislature's expressed intention, and is, in fact, in direct opposition to the well-settled rule that such exemptions should be narrowly construed.

Lastly, the majority argues that since the end result is the same, i.e., the patient gets oxygen, the fact that the means of getting that oxygen are different should not be of consequence. While I do not dispute that it makes good logical sense that oxygen concentrators, as well as oxygen as currently allowed by the statute, *should* be subject to a sales tax exemption, it is up to the legislature, not the judiciary, to expand Utah Code Ann. § 59–12–102(4)(a)(iii) (1992) to include oxygen concentrators. *See generally Larsen v. Allstate Ins. Co.,* 857 P.2d 263, 266 (Utah App.1993) ("[S]ince it is the judiciary's duty to interpret the law as the legislature has enacted it, not to rewrite the law as it sees fit, such arguments are better saved for the legislature.") Furthermore, it was represented at oral argument that oxygen concentrators were available at the time the statute was passed. Thus, if the legislature wanted such devices to be covered by the statute, it could have stated so at that time. Since it did not, we must assume that the legislature did not intend oxygen concentrators to be included within the ambit of Utah Code Ann. § 59–12–102(4)(a)(iii) (1992).

In the interpretation of statutes, the courts of this state are required to follow the fundamental principle of jurisprudence that "[w]e must be guided by the law as it is. We cannot by construction liberalize the statute and enlarge its provisions. When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction." *Ferro v. Utah Dep't of Commerce,* 828 P.2d 507, 514 (Utah App.1992) (quoting *Hanchett v. Burbidge,* 59 Utah 127, 202 P. 377, 380 (1921)). Since "[t]erms not appearing in a tax statute are not to be implied if 'its plain meaning does not require such a construction,'" *Belnorth Petroleum Corp. v.*

---

**3.** Additionally, the fact that during the Senate hearing regarding sales tax exemptions for oxygen, Senator Swan, the sponsor of the bill, refers to the "use of oxygen," instead of the sale of

oxygen, is inconsequential. According to the plain terms of Utah Code Ann. § 59–12–104(10) (1992), the exemption in question concerns a sales tax, not a use tax.

*Utah State Tax Comm'n*, 845 P.2d 266, 270–71 (Utah App.1993) (quoting *Salt Lake County v. Utah State Tax Comm'n*, 779 P.2d 1131, 1132 (Utah 1989)), it is improper in the case at bar to enlarge the provisions of Utah Code Ann. § 59–12–102(4)(a)(iii) (1992) to include oxygen concentrators.

For the foregoing reasons, I would affirm the Tax Commission's denial of an exemption under Utah Code Ann. §§ 59–12–104(10) and 59–12–102(4)(a)(iii) (1992). Accordingly, I dissent.