The 49TH STREET GALLERIA,
Petitioner,

v.

TAX COMMISSION, AUDITING DIVISION, State of Utah,
Respondent.

Alan V. Funk, Coopers & Lybrand, Intervenor.

No. 930053–CA.

Court of Appeals of Utah.

Oct. 7, 1993.

LaVar F. Christensen, Midvale, for petitioner.

Jan Graham and John C. McCarrey, Salt Lake City, for respondent.

Stephen W. Rupp, Salt Lake City, for intervenor.

Before BENCH, JACKSON and ORME, JJ.

OPINION

ORME, Judge:

The 49th Street Galleria seeks our review of a decision by the Utah State Tax Commission requiring the collection of a sales tax by the Galleria on fees collected for "admission" to its batting cages, laser tag game, and roller skating rink under Utah Code Ann. § 59–12–103 (1992).[1] We re-

---

1. The applicable statute provides, in pertinent part, as follows:

   (1) There is levied a tax on the purchaser for the amount paid or charged for the following:

   . . . .

   (f) admission to any place of amusement, entertainment, or recreation, including seats and tables reserved or otherwise, and other similar accommodations[.]

verse on the basis that no admission fee, of the sort contemplated in the statute, is charged by the Galleria.

## FACTS

In 1984, the Galleria opened for business as an indoor entertainment mall in Murray, Utah. The mall houses arcade games, video machines, a bowling alley, a miniature golf course, amusement rides, roller skating, batting and pitching cages, food concessions, and laser tag.[2] The public may enter the Galleria without charge, and tables and seats are placed throughout the mall for the public to use free of charge. Fees are assessed only when an individual decides to participate in one of the many available activities.

Turning to the activities at issue in this case, a batting cage consists of a fenced area containing a machine that pitches baseballs or softballs to customers standing within the cage. The machine is operated either by tokens or by cash payment to an attendant. An individual pays to have the ball delivered by the machine. A fee is not charged for simply entering the batting cage and, indeed, coaches are allowed to stand in the cage and advise the batter without paying an admission charge.

The record contains a less detailed description of laser tag, but indicates it is operated in a manner similar to the batting cages. The Tax Commission's findings state that "[u]pon payment of a cash fee, customers were provided laser guns and sensing devices and engaged in mock combat in an enclosed area." In the roller skating operation, an individual is allowed to "skate for a period of time upon payment of cash," while parents and other onlookers may enter the skating facility and observe without charge.

In the spring of 1984, the Galleria requested the Auditing Division of the Utah State Tax Commission to determine whether the Galleria's activities would be subject to Utah sales tax. Kenneth Cook of the Auditing Division informed the Galleria that receipts from the batting cages and roller skating rink would be subject to tax, while, apparently, fees for bowling and miniature golf would not be. The Galleria then sought additional review. In August of 1984, George M. Loertscher of the Auditing Division informed the Galleria that roller skating, batting cages, miniature golf, and bowling were not subject to sales tax. Relying on Loertscher's letter, the Galleria did not collect sales tax on the activities identified.[3] When the Galleria subsequently added laser tag to its repertoire of amusements, it continued its consistent practice of not collecting sales tax on these activities.

Some years later, the Auditing Division undertook a routine compliance audit. This time it was determined that the Galleria was required to collect an admission tax on fees collected for use of its batting cages, roller skating rink, and laser tag amusement, but not on the corresponding fees for bowling and miniature golf. The Galleria sought agency review of the assessment and the Tax Commission, in a decision dated November 20, 1991, held that fees for use of the batting cages, roller skating, and

---

Utah Code Ann. § 59–12–103(1)(f) (1992).

The audit that resulted in the imposition of tax liability was for the period of July 1, 1986, through June 30, 1989. The substantive law then in effect governs this dispute. *Chicago Bridge & Iron Co. v. State Tax Comm'n,* 839 P.2d 303, 306 (Utah 1992). Nonetheless, both parties cite to the 1992 version of the Utah Code Annotated. That version is identical to the law in effect for the period from January 1, 1987, to the present. However, between July 1, 1986, and January 1, 1987, the statutory language was more succinct and simply stated that the tax was due on any "amount paid for admission to any place of amusement, entertainment, or recreation." Utah Code Ann. § 59–15–4(1)(d) (Supp.1986). Since the instant case does not involve facts contemplated by the statutory language added as of January 1, 1987, we follow the parties' lead in citing the current version of the code.

**2.** Laser tag was not offered when the Galleria first opened and has since been discontinued, but it was offered during the period of the audit.

**3.** Equipment rental is a separate matter. The Galleria has routinely collected sales tax on the rental of bowling shoes and roller skates by those patrons who do not provide their own equipment. The taxability of such transactions is not in issue.

laser game were payments for "admission" subject to sales tax.[4] The Galleria then sought reconsideration, and the Tax Commission denied that request by decision dated March 10, 1992.[5] The Galleria now seeks judicial review of the Tax Commission's determination that fees for the use of the batting cages, roller skating rink, and laser tag game are subject to Utah sales tax under Utah Code Ann. § 59–12–103(1)(f) (1992).

## JURISDICTION

Before addressing the merits of this case, we must first determine whether the petition for judicial review was timely filed. The Tax Commission issued its final decision on November 20, 1991, and the Galleria petitioned the Commission for reconsideration on December 10. The Auditing Division filed its brief in opposition to reconsideration on January 3, 1992, and the Galleria replied on January 21. The Tax Commission issued its order denying the petition for reconsideration on March 10, 1992, and the Galleria filed its petition for judicial review within thirty days of that disposition.

Pursuant to Utah Code Ann. § 63–46b–13(3)(b) (1989), a request for administrative reconsideration is "deemed denied" if an order is not issued by the agency within twenty days after the filing of the request.[6] The Tax Commission did not issue its order denying reconsideration within twenty days of December 10, 1991, but rather some three months later, on March 10, 1992. Despite its own delay in disposing of the reconsideration request, the Tax Commission now argues that, under section 63–46b–13(3)(b), its order is deemed to have been issued on December 30, 1991, and the Galleria's petition for review is untimely because it was not filed within thirty days of that date, as required by Utah Code Ann. § 63–46b–14(3)(a) (1989). That provision states:

> A party shall file a petition for judicial review of final agency action within 30 days after the date that the order constituting the final agency action is issued *or* is considered to have been issued under Subsection 63–46b–13(3)(b).

*Id.* (emphasis added). The Tax Commission simply ignores the disjunctive term "or" found in section 63–46b–14(3)(a) and interprets the statute to mean that if an order is not issued within the twenty day "deemed denied" period, the thirty-day jurisdictional clock for judicial review begins irretrievably to run.[7]

---

4. Because of the conflicting advice provided by the Auditing Division, the Tax Commission held that the Galleria would not be liable for the tax due on the roller skating and batting cage receipts during the period of the audit, but only prospectively.

    The Tax Commission now argues that because the tax is not being assessed against roller skating and batting cage receipts for the audit period, the issue is moot and any decision on the future taxability of those receipts is simply an advisory opinion. We disagree. "A case is deemed moot when the requested judicial relief cannot affect the rights of the litigants." *Burkett v. Schwendiman,* 773 P.2d 42, 44 (Utah 1989). A determination by this court will affect the rights of the litigants. Furthermore, the issue has been fully briefed and is squarely before us. It is clear the real dispute has always been whether the tax is applicable to these activities, not simply whether the tax is due for any particular period.

5. In its order denying reconsideration, the Commission explicitly recognized that the distinction between taxing batting cages and bowling was difficult to draw and that the disparate treatment might not exist if a new look at the bowling issue were undertaken. In a letter dated August 7, 1986, Jim Roger, then Director of the Auditing Division, recognized that "[t]he Auditing Division has for quite some time had some questions about which activities come under the definition of an admission."

6. The "deemed denied" provision states in its entirety:

    > If the agency head or the person designated for that purpose does not issue an order within 20 days after the filing of the request, the request for reconsideration shall be considered to be denied.

    Utah Code Ann. § 63–46b–13(3)(b) (1989).

7. In the Tax Commission's view, the parties' briefs filed with and accepted by the commission in January of 1992 were for naught, although accepted by the commission when tendered, because they were filed more than twenty days after December 10, and the commission's multiple page order of denial, issued weeks later, was a completely meaningless gesture.

■ We disagree. A plain reading of the statute indicates that a party may file a petition for judicial review within thirty days after the order constituting the final agency action, in this case the order denying reconsideration issued on March 10, 1992, *"or"* within thirty days after the "deemed denied" date established by section 63–46b–13(3)(b). In the instant case, the Galleria filed its petition for review within thirty days of the Tax Commission's March 10 final order and this court therefore has jurisdiction to hear the case.[8]

### STANDARD OF REVIEW

■ Our analysis of tax cases is guided by the standards of review announced in Utah Code Ann. § 59–1–610 (Supp.1993). *OSI Indus., Inc. v. State Tax Comm'n,* 860 P.2d 381, 383 (Utah App.1993) (because section 59–1–610 is procedural, it applies retroactively). *See Miller Welding Supply, Inc. v. State Tax Comm'n,* 860 P.2d 361 (Utah App.1993) (applying section 59–1–610 to a sales tax case involving an audit conducted between 1987 and 1989). *But see Thorup Bros. Constr., Inc. v. State Tax Comm'n,* 860 P.2d 324 (Utah 1993).[9] Section 59–1–610 directs this court to

> grant the commission no deference concerning its conclusions of law, applying a correction of error standard, unless there is an *explicit* grant of discretion con-

tained in a statute at issue before the appellate court.

Utah Code Ann. § 59–1–610(1)(b) (Supp. 1993) (emphasis added). This statute supersedes the Utah Administrative Procedures Act insofar as it pertains to judicial review of formal adjudicative proceedings. *Id.* § 59–1–610(2). Prior to the recent enactment of section 59–1–610, it was the mandate of this court to determine whether the Legislature had, either explicitly *or* implicitly, granted an agency discretion and, if so, to review the agency action for reasonableness. *Morton Int'l, Inc. v. State Tax Comm'n,* 814 P.2d 581, 587–88 (Utah 1991). *See, e.g., SEMECO Indus., Inc. v. State Tax Comm'n,* 849 P.2d 1167, 1173 (Utah 1993) (Durham, J., dissenting); *Nucor Corp. v. State Tax Comm'n,* 832 P.2d 1294, 1296 (Utah 1992). Section 59–1–610 requires this court to depart from its prior practice and, in the case of the Tax Commission, to refrain from reviewing agency action under a deferential standard unless there is an *explicit* grant of discretion. Since the statute at issue, section 59–12–103, does not contain language which would even arguably constitute an *explicit* grant of discretion to the Tax Commission,[10] the commission's action in interpreting the scope of the sales tax on "admissions" must be reviewed without deference and for correctness.

---

8. We note that *Lopez v. Career Services Review Board,* 834 P.2d 568, 571–72 (Utah App.), *cert. denied,* 843 P.2d 1042 (Utah 1992), relied on by the Tax Commission, does not support its position. The *Lopez* court was concerned with the legal significance of a letter issued *within* the twenty day "deemed denied" period of § 63–46b–13(3)(b) and whether it qualified as an order so as to start the thirty-day jurisdictional time then, rather than upon the elapse of twenty days. The instant case presents a completely different question because the agency's final order was issued well beyond the twenty-day period.

9. In *Thorup,* decided after both *OSI* and *Miller Welding,* the Supreme Court reviewed whether the Tax Commission's action was contrary to one of the commission's rules under a reasonableness and rationality standard, citing the Utah Administrative Procedure Act. Utah Code Ann. § 63–46b–16(4)(h)(ii) (1989). It is unclear from the decision, since Utah Code Ann. § 59–1–610 was not mentioned, whether the new stat-

ute was simply not considered by the Court or whether the Court decided it was inapplicable, either by its terms or because the Court does not subscribe to the retroactivity conclusion of *OSI* and *Miller Welding.* In the face of such ambiguity, it is prudent to follow the clear holdings of the previous decisions of this court. *See State v. Thurman,* 846 P.2d 1256, 1269 (Utah 1993).

10. The case law indicates that where the Tax Commission has been held to have discretion in the interpretation and application of the sales tax statute, that delegation is implicit. *Compare Union Pac. R.R. v. State Tax Comm'n,* 842 P.2d 876, 884–85 (Utah 1992) (decided before the adoption of § 59–1–610 and finding a grant of discretion without stating whether it is explicit or implicit) *with SEMECO Indus., Inc. v. State Tax Comm'n,* 849 P.2d 1167, 1175–76 (Utah 1993) (Durham, J., dissenting) (finding implicit delegation to interpret terms within Utah's sales tax statute). *See also Morton Int'l, Inc. v. State Tax Comm'n,* 814 P.2d 581, 588 (Utah 1991).

## UTAH'S ADMISSION TAX

Utah imposes a sales tax on the amount paid or charged by a purchaser for

*admission* to any place of amusement, entertainment, or recreation, including seats and tables reserved or otherwise, and other similar accommodations[.]

Utah Code Ann. § 59–12–103(1)(f) (1992) (emphasis added).

The Tax Commission has adopted rules interpreting the key language of the admission tax. Utah Administrative Code R865–19–33S(A) (1993) [11] specifically states in pertinent part:

A. "Admission" means the right or privilege to enter into a place. Admission includes the amount paid for the right to use a reserved seat or any seat in an auditorium, theater, circus, stadium, schoolhouse, meeting house, or gymnasium to view any type of entertainment. Admission also includes the right to use a table at a night club, hotel, or roof garden whether such charge is designated as a cover charge, minimum charge, or any such similar charge.

Aside from its elaboration on seats and tables, not applicable here, this rule speaks in terms of the right to enter a place and not in terms of a fee charged to use facilities or equipment within a place. As such, the rule merely incorporates the plain and settled meaning of "admission." *See, e.g.,* Webster's Third New International Dictionary 28 (1976) (defining admission as, *inter*

**11.** We cite to the most recent version of the Utah Administrative Code as a convenience to the reader. The portions of the rules quoted in this opinion were the same, in all material respects, throughout the audit period.

**12.** The Tax Commission, as admitted in the order denying the petition for reconsideration in this case, has consistently taken the position that bowling is not subject to the sales tax on admission fees. Nor have fees for golfing, tennis, racquetball, miniature golf, or driving ranges been subject to the tax. The Tax Commission's application of its rule vis-a-vis bowling and these other activities appears to be correct because no admission fee is customarily charged for the "right or privilege to enter," for instance, a bowling alley.

*alia,* "an act of admitting . . .; permission or right to enter").

■■■■ Neither the existence nor the content of the interpretive rule defining "admission" is meaningfully challenged in the instant proceeding. The single issue for us, then, is this: Assuming the rule reflects the correct interpretation of the statute, as seems inarguable, did the Tax Commission decide correctly that sales tax on admissions should be assessed on the fees charged by the Galleria for the use of batting cages, the roller rink, and laser tag? While the Tax Commission "recognizes that distinctions between [bowling and batting cages] are difficult to draw," [12] we hold no meaningful distinction can be drawn for purposes of the admissions tax, given the Tax Commission's own interpretation of "admission."

Not only does the record indicate no fee is charged for the right or privilege to enter the Galleria, but individuals such as coaches may enter the batting cage without paying an admission fee. The situation is apparently no different for laser tag or roller skating. Consequently, the Tax Commission erred in departing from its traditional application of the rule. The rule states that admission means the "right to enter a place." There is simply no fee charged by the Galleria for admission to any place; there are only fees charged to do particular things. [13] Thus, given the Tax Commission's own interpretation of the statute, as memorialized in its rule, its decision in this case is incorrect.

**13.** Language in another rule, which rule is vigorously challenged by the Galleria, defines "place of amusement." That rule has verbiage consistent with the Tax Commission's position. *See* Utah Admin.Code R865–19–34S (1993) ("sale of a ticket for a ride upon a mechanical or self-operated device is an admission to a place of amusement"). However, given the scheme of § 59–12–103(1)(f), the meaning of the terms "place of amusement, entertainment, or recreation" becomes relevant only if the threshold determination of an "admission" had been shown. Thus, because we hold the fees charged by the Galleria for use of the batting cages, etc., are not for *admission,* we need not go on to decide whether those venues qualify as "place[s] of amusement, entertainment, or recreation."

## CONCLUSION

The Tax Commission's decision that the Galleria is liable for an admission tax on the activities of roller skating, batting cages, and laser tag is therefore reversed.

BENCH and JACKSON, JJ., concur.