The STATE of Texas, Petitioner,

v.

HOUSTON TOUR AND CHARTER SERVICE, INC., Respondent.

No. B–2094.

Supreme Court of Texas.

Nov. 18, 1970.

Rehearing Denied Dec. 16, 1970.

**114**

Crawford C. Martin, Atty. Gen., James M. Mabry, Asst. Atty. Gen., Austin, for petitioner.

Sears & Burns, Will Sears, Houston, for respondent.

STEAKLEY, Justice.

The question here is whether Houston Tour & Charter Service, Inc., respondent, is a statutory "Motor Bus Company" in the respects under review, and hence subject to the requirements of the Texas Motor Bus Act, Article 911a, Vernon's Annotated Texas Civil Statutes. In suit by the State the trial court ruled that motor bus operations over the public highways in the manner instituted by respondent were contrary to the statute. Respondent was enjoined from continuing the service. After originally affirming the judgment of the trial court, the court of civil appeals on motion for rehearing considered its prior decision in Foster v. Railroad Commission et al., 215 S.W.2d 267 (Tex.Civ.App.1948, no writ), to be controlling and reversed the judgment of the trial court and ordered the injunction dissolved. 451 S.W.2d 244. We reverse this judgment, affirm that of the trial court and reinstate the injunction.

The controlling facts are undisputed. Respondent holds a permit from the City of Houston authorizing the performance of a charter bus service within the City and its right to operate pursuant thereto is not in dispute.[1] The distinguishing characteristic of a charter bus service is that routes, points of service and times of departure, arrival and return, are determined by the chartering passengers. The controversy inheres in the fact that respondent has extended its charter bus service to points and places beyond the City of Houston and its suburbs, the performance of which necessitates the transportation of persons for compensation or hire over the public highways. The service is regular in the sense that it is available to the public on call in ordinary course of business and will be rendered more often than casually or occasionally. Respondent has not filed for and hence has not obtained an authorizing certificate of public convenience and necessity from the Railroad Commission of Texas and insists upon its right to so operate without compliance with Article 911a.

█ Section 1(c) of Article 911a comprehensively defines a Motor Bus Company as:

"The term 'Motor Bus Company' when used in this Act *means every* corporation or persons as herein defined, their lessees, trustees, receivers, or trustees appointed by any court whatsoever, owning, controlling, operating or managing any motor propelled passenger vehicle not

1. Section 1(c) of Article 911a provides that its regulatory thrust does not include the operation of motor propelled passenger vehicles wholly within the limits of any incorporated town or city and its suburbs.

usually operated on or over rails, and engaged in the business of transporting persons for compensation or hire over the public highways within the State of Texas, *whether operating over fixed routes or fixed schedules, or otherwise*; * * *." [2]

Section 2 provides that:

"*All motor-bus companies, as defined herein, are hereby declared to be 'common carriers' and subject to regulation by the State of Texas*, and shall not operate any motor propelled passenger vehicle for the regular transportation of persons as passengers for compensation or hire over any public highway in this State except in accordance with the provision of this Act, * * *."

Broad regulatory powers and duties are vested in the Railroad Commission; for example, Sections 4(a) and 4(d) provide:

"Sec. 4. (a) The Commission is hereby vested with power and authority, and it is hereby made its duty to supervise and regulate the public service rendered by *every motor bus company* operating over the highways in this State, * * *."

"(d) The Commission is further authorized and empowered to supervise and regulate motor bus companies in all other matters affecting the relationship between such motor bus companies and the traveling public that may be necessary to the efficient operation of this law." Section 5 establishes this requirement:

"No motor-bus company shall hereafter regularly operate for the transportation of persons as passengers for compensation or hire over the public highways of this State without first having obtained from the Commission under the provisions of this Act a certificate or permit declaring that the public convenience and necessity require such operation; * * *."

These and other requirements of Article 911a manifest an original and continuing legislative purpose to regulate in the public interest those carriers which use the public highways in the transportation of passengers for compensation or hire. See Texas Motor Coaches, Inc. v. Railroad Commission et al., 41 S.W.2d 1074 (Tex.Civ. App.1931, no writ.); and Cf. Woolf v. Del Rio Motor Transp. Co., 27 S.W.2d 874, 875 (Tex.Civ.App.1930, no writ). Respondent concedes that motor bus operations over the public highways and beyond the authority of its permit from the City of Houston fall within the statutory definition of a Motor Bus Company. Notwithstanding, it says, it is immune from the statutory requirements because it does not perform the charter bus service over fixed routes and on established schedules. It argues that the statutory definition should be judicially constricted to include only motor bus companies operating over fixed routes and schedules. The argument seeks credibility in the statutory phrases of "regular transportation of persons" in Section 2 of Article 911a and "regularly operate for the transportation of persons" in Section 5; and in the requirement of Section 8 that an application for a certificate shall set forth, among other matters of information, "The complete route or routes over which the applicant desires to operate," together with "A proposed time schedule." These expressions, it is said, manifest a legislative purpose contrary to the terms of the Section 1(c) definition of a Motor Bus Company.

The terms "regular" and "regularly" which appear in Sections 2 and 5 were carried over from the corresponding sections of the original Motor Bus Act of 1927 in which the definition of "Motor Bus Company" was stated in terms of engaging *"regularly* in the business of transporting persons as passengers for compensation or hire over the public highways between points within the State of Texas, *whether operating over fixed routes or otherwise,* * * *." [3] It is thus self-evident that use

---

2. Italics in each instance are those of the Court.

3. See Acts 1927, 40th Leg., p. 399, ch. 270.

of the term "regularly" in the original definition[4] and of similar terms in original Sections 2 and 5, did not carry the connotation of fixed or regular route operations since the definition expressly excluded operations over fixed routes or otherwise as definitive or restrictive elements. Likewise evident at all times in the statutory definition and related provisions is the all-inclusive regulation of passenger transportation over the public highways. Section 2 says that all motor bus companies as defined in Section 1 are common carriers and this necessarily includes carriers performing the service by charter arrangements since they clearly come within the terms of the definition of a motor bus company. This construction is not only reasonable and in conformity with the words of the statute, but is essential as well to the accomplishment of the declared purposes of the Legislature in the regulation of passenger transportation over the highways. Cf. Southwestern Savings and Loan Ass'n. of Houston v. Falkner, 160 Tex. 417, 331 S.W.2d 917 (1960). The effect which respondent would have us give to the carry-over phrases in present Sections 2 and 5 of Article 911a would contradict the regulation of passenger transportation in the manner intended and provided by the Legislature from the beginning. Moreover, the statutory references to the regular transportation of persons do not, standing alone, and apart from their legislative source, carry an inference of applicability only to carriers operating on fixed routes and schedules. As said by the Supreme Court of Pennsylvania in Monaco v. Montgomery Cab Company, 417 Pa. 135, 208 A.2d 252 (1965):

> "Nor does 'regularly' necessarily mean, as defendant contends, that the acts must be performed on a fixed schedule or, when driving is involved, over a fixed route. The question is whether the acts

are being 'regularly' performed within the context of the particular business."

It is evident, then, that the Section 8 enumeration of the requirements of an application for a certificate of public convenience and necessity means only that an applicant proposing to operate over particular routes and on established schedules, as is the usual case, must so specify. This can have no application to a proposed motor bus charter service not having these characteristics.

Nor can respondent find the support it claims in the classification of motor carriers of property in Article 911b, the Texas Motor Carrier Act. There is no significance to the problem at hand in the different manner of regulation of common carriers of property. At all times since the inception of statutory regulation the Legislature has specifically distinguished between motor carriers using the highways for transporting property on regular routes and schedules, and those having no fixed routes, schedules or termini. In the original Act these carriers were respectively classified as class "A" and class "B" motor carriers and so regulated.[5] Presently they are classified as common carrier motor carriers operating on regular routes and schedules and specialized common carrier motor carriers operating over irregular routes on irregular schedules, with particular statutory requirements and conditions as to each.[6] See Railroad Commission v. Texas & P. Ry. Co., 138 Tex. 148, 157 S.W.2d 622 (1941). But as previously reviewed, the manner of the statutory regulation of passenger carriers has always been otherwise; the transportation of persons over the public highways has constituted a regulated activity whether or not the common carrier motor bus company operates over fixed and regular routes and schedules.

---

4. In 1929 the Legislature removed the modifying adverb "regularly" from the definition of a Motor Bus Company; see Acts 1929, 41st Leg., 1st C.S., p. 196, ch. 78.

5. See Acts 1929, 41st Leg., p. 698, ch. 314.

6. See Acts 1931, 42d Leg., p. 480, ch. 277; and Acts 1941, 47th Leg., p. 713, ch. 442.

The judgment of the court of civil appeals is reversed and that of the trial court is affirmed; the injunction ordered by the trial court and dissolved by the court of civil appeals is reinstated.