**YOUTH TENNIS FOUNDATION of Utah,
Plaintiff,**

v.

**TAX COMMISSION of the State of Utah
et al., Defendants.**

No. 14350.

Supreme Court of Utah.

Aug. 23, 1976.

14. 76-1-503, U.C.A.1953 (1975 Pocket Supp.).

15. *State v. Kazda,* supra, 15 Utah 2d at p. 317, 392 P.2d 486.

Jack Fairclough, Salt Lake City, for plaintiff.

Vernon B. Romney, Atty. Gen., G. Blaine Davis and Michael L. Deamer, Asst. Attys. Gen., Salt Lake City, for defendants.

CROCKETT, Justice:

Plaintiff, Youth Tennis Foundation of Utah, a nonprofit corporation, conducted a professional tennis tournament in 1973, and charged admissions which totaled more than its expenses. On the basis that this was an operation for profit, defendant Tax Commission assessed the four per cent sales tax, amounting to $1,364.80 on the tickets sold. After an administrative hearing before the Tax Commission, it affirmed the assessment of the tax. Plaintiff appeals.

The pertinent part of Section 59–15–6, U.C.A.1953, under which plaintiff claims exemption is:

> Exempt sales: all sales made to or by religious or charitable institutions in the conduct of the regular religious or charitable functions and activities . . . shall be exempt from taxation under this act.[1]

Plaintiff contends that it is a charitable institution and that the conducting of this tennis tournament was an essential part of its "regular activities in performing its charitable functions" within the meaning of that statute.

Charity in the broad sense is the giving of something of benefit to others without expectation of gain.[2] Considering it in more direct focus under this statute, it means providing something for the public welfare, which includes not only material, educational and cultural, but aso extends to physical and recreational needs.[3] The government assumes some responsibility for providing such needs; and the justification for tax exemption is to give encouragement

---

1. Pursuant to this statute the defendant Commission has adopted its Regulation S–43 in substantially the same language.

2. See 15 Am.Jur.2d, p. 7.

3. *Benevolent and Protective Order of Elks No. 85 v. Tax Commission,* 536 P.2d 1214 (Utah 1975).

and support to those who assist in discharging those responsibilities.

In the evolvement of civilization, as methods improved in obtaining the basic necessities of food, clothing and shelter, and liberated men to give some time, talent and energy to the development of the arts and culture, those in favored economic positions have indulged in the charity of sponsoring and encouraging others in those pursuits. In former times under other systems this was done primarily by the sovereign and the nobility. In our system these do not exist. The sovereign is the people; and the people through their legislature have enacted the statute quoted above, extending sponsorship to charitable institutions by the declared exemption from taxation. In determining whether the plaintiff should be so classified and afforded the benefit of the exemption it is appropriate to examine not only what it says, by the declarations in its charter and otherwise, but more importantly, what it actually does in implementation thereof.

Plaintiff was chartered in 1946 as a nonprofit corporation. The declaration of purpose stated in its articles is the sponsoring, promoting and encouraging of amateur tennis. Particularly, this is to be done by stimulating tennis in schools, playgrounds and parks, giving encouragement, coaching and instruction to junior players, organizing and managing tournaments, and in general, fostering good sportsmanship, recreation and health. Plaintiff has no membership and is administered by a four-man governing board. It derives its income from several sources, including voluntary contributions, proceeds from tournaments it holds, gains from the sale of equipment to schools, and interest on its money.

Secretarial, accounting, legal and other services are donated to plaintiff, so its expenses are minimal; and it carefully limits expenditures to those that are necessary to carry out the above stated objectives. Under its articles neither the corporation nor any of its officers, nor any other person, has any right to earnings or dividends or any other benefit. It is also provided that upon its termination or dissolution any remaining assets must go to other charitable institutions, the University of Utah development fund, or to the National Tennis Foundation.

The tournament of interest here is similar to others plaintiff has staged in the past, including the U. S. Clay Court Championships, the U. S. Men's Hardcourt Championships, the NCAA Championships, and the National Men's Amateur Indoor Championships. It has made donations of both money and equipment to such activities as the University of Utah's tennis programs; to the Little League and Junior League tennis teams; to the Salt Lake City and County Recreation Department's tennis programs. It provides instruction courses to young boys and girls; and also supplies travel funds so that amateur players can compete in tournaments outside of Utah. These services are supplied to the public generally, without any discrimination by reason of race, creed, or economic circumstances. Its income, from all sources, over the period of 1967 to 1974, totaled $69,151.74, of which it expended $55,860.24 in carrying out the above stated purposes. The remainder of its funds are kept in reserve to be so managed as to best conserve and augment them to be applied to the same purposes in the manner and time determined by the governing board.

It is the defendant's position that notwithstanding what has been said above, the plaintiff engages in certain practices which justify classifying its functions as regular business, as distinguished from charitable activities. Some of these charges are: That it loans out some of its funds and receives interest thereon; that it purchases tennis equipment at wholesale prices which it sells to local schools at less than retail prices; and that it charges admissions at some of the tournaments its sponsors.

Concerning these charges we observe: First, it would indeed be unwise and

improvident if the plaintiff did not keep its unexpended funds in some depository where interest could be received thereon. Second, the purchase of tennis equipment and its sale to schools at less than retail prices is entirely consistent with its general plan and commitment. Sales which are made merely incidental to and consistent with charitable purposes do not change that character or deprive it of attendant protections.[4] Third, this also applies to the charge of admission fees in order to defray the expenses of such tournaments in carrying out its objectives.[5] It does not appear that the fact that the plaintiff engages in the practices just discussed carries it generally into the field of competition with private enterprise. Its activities are correlated to the prudent management of its resources in order to better accomplish its commitment to the humanitarian purposes of encouraging and supporting the improvement of the moral, mental and physical welfare of the public. It thus comes within the meaning of the term charitable activities as used in our statute.[6]

■ A further contention made by the defendant is that plaintiff's putting on the tournament upon which the tax in controversy was assessed, does not come within the meaning of the statutory language, "regular . . . charitable functions . . ." and is thus not exempt under the statute quoted above. It is agreed that one of the meanings of the term "regular" is: "Steady or uniform in course, practice or occurrence";[7] and that in some contexts this connotes a particular repetitive time sequence. But the term also has a broader meaning in that something can be done "regularly" if done whenever the opportunity arises, though the actual time sequence may be sporadic.

The fact appears to be that continually since plaintiff's beginning one of its activities has been to promote and put on tennis tournaments at various levels, in which trophies and awards are made; and this has included tournaments such as the one in question, which attracts players of national repute when conditions seemed propitious for doing so; and that when it was practical to do so, admission fees were charged to help defray the expenses thereof; and further, that when income exceeded expenses, the balance was added to plaintiff's reserve funds. This tournament is similar to numerous others which the plaintiff has conducted as the opportunity arose, consistent with its purpose, and even though this occurred at intermittent times, it was part of its "regular activities" in that sense.

Another aspect of this case worthy of comment is the defendant's urgence that there is business involvement and interchange between the plaintiff and two other institutions managed and perhaps largely dominated by one personality, David L. Freed, who is a founder of plaintiff and a member of its governing board. Defendant avers that the plaintiff's money reserve is placed with the Freed Investment Company, of which Mr. Freed is principal officer and manager; and with the Salt Lake Tennis Club, wherein Mr. Freed exercises similar influence. The rejoinder to this is that the matter should be judged upon its merits, and not because of the personalities involved.

■ It appears that Mr. Freed has been one of the leading figures in tennis activities in this area for many years and that out of this arose his roles in the creation of the plaintiff, and that he plays an important part in the operations of both the plaintiff and the Salt Lake Tennis Club.

---

4. See *Y. M. C. A. v. Philadelphia*, 139 Pa. Super. 332, 11 A.2d 529; *Y. M. C. A. v. New York*, 276 N.Y. 619, 12 N.E.2d 605; *St. John's Medical Center Inc. et al. v. Spradling*, 510 S.W.2d 417 (Mo.).

5. 84 C.J.S. Taxation § 282.

6. *Matanuska-Susitna Borough v. King's Lake Camp*, 439 P.2d 441 (Alaska).

7. Black's Law Dictionary 1450 (Rev. 4th Ed. 1968).

On the loans made to Freed Investment Company, the plaintiff receives 8 per cent interest, which is considerably above the current bank rate for deposits and equal to or better than it could receive in any other depository. The money loaned to the Salt Lake Tennis Club bears similarly favorable rates of interest and is amply secured by pledges of stock. The additional fact that the plaintiff has cooperated in arranging for a policy of insurance on the life of Mr. Freed, for which it pays the premiums, for the purpose of assuring that should anything happen to him the loans made to the institutions he largely controls would be paid, is consistent with modern business practices, and not inconsistent with the plaintiff's prudent conservation of its funds.

Whether some aspects of the conduct of plaintiff's affairs may be subject to some criticism as to the propriety of its management as a charitable institution is for its governing board to consider. However, on the basis of the record before us, in examining both the plaintiff's declaration of purposes in its charter, and its various activities in implementing that purpose, we have found nothing to justify any reasonable conclusion that either the corporation or any officer thereof is or has been operating it for a profit to themselves, nor doing other than to use their best judgment in carrying out of its objectives.

On the basis of what has been said herein, it is our conclusion that the plaintiff meets the statutory requirements as a nonprofit charitable corporation and that the tennis tournament here under challenge was part of its regular charitable activities which should be exempt from taxation.

The case is remanded for the entry of such an order. No costs awarded.

HENRIOD, C. J., and ELLETT and TUCKETT, JJ., concur.

MAUGHAN, J., concurs in the result.