Argued and submitted October 24, reversed and remanded with instructions
November 27, 1996

Hans BURKHART,
*Respondent,*

*v.*

FARMERS INSURANCE COMPANY
OF OREGON,
*Appellant.*

(93-CV-0226-ST; CA A85959)

927 P2d 1111

Brian L. Gingerich argued the cause for appellant. With him on the briefs were Dennis James Hubel and Karnopp, Petersen, Noteboom, Hubel, Hansen & Arnett.

William J. Storie argued the cause for respondent. With him on the briefs were John D. Sorlie and Bryant, Lovlien & Jarvis. Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Defendant is the homeowners insurer of plaintiff Burkhart. Plaintiff brought this action on the policy after defendant denied coverage for a claimed theft loss. The trial court entered judgment for plaintiff after the jury returned a verdict in his favor. Defendant appeals, and we reverse.

Plaintiff met Arlene Hilles in Squaw Valley, California, in 1980. After a period of "off and on" shared living arrangements in Squaw Valley, plaintiff and Hilles moved into the insured location, plaintiff's residence in Bend, Oregon, in 1983. Except for brief hiatuses, the two lived together, principally in the house in Bend, until June 1992. They had two children. Although the relationship continued, in the main, for several more years, the couple initiated a series of lawsuits against one another, beginning in 1988. The litigious activities culminated in a "palimony" suit that Hilles brought against plaintiff and an FED action by plaintiff against Hilles. The two actions were brought in Deschutes County at roughly the same time in 1991, and proceeded more or less simultaneously. They produced, *inter alia*, restraining orders allowing Hilles the exclusive use of the Bend residence and directing plaintiff to stay away from it; an order that Hilles pay plaintiff rent for her use of the property after May 25, 1992, until the resolution of the actions; and, ultimately, a stipulation that plaintiff would have possession of the property as of June 24, 1992.

Hilles moved out of the residence on June 24. When she did so, however, she took a substantial amount of personal property with her. Plaintiff filed a claim with defendant, contending that the property was his and had been stolen by Hilles.[1] Defendant denied the claim, on the basis of three exclusions in its policy. The first excludes coverage for losses by theft "committed by any person regularly residing on the insured location."[2] (Emphasis deleted.)

---

[1] Hilles maintained that the property was hers or that she had the right to take it. In 1993, she was acquitted of theft charges relating to the same property.

[2] In view of our disposition, we need not address the other two exclusions on which defendant relies. It is not entirely certain whether the language in question constitutes an exclusion or is part of the definition of the theft coverage. Our analysis does not depend on how the language, which we conclude defeats coverage as a matter of law in either event, is labeled. We will use the term "exclusion."

At trial, defendant moved for a directed verdict, asserting that the exclusion was unambiguous and that it precluded coverage as a matter of law. The court denied the motion, and the question was submitted to the jury. It found, along with other answers favorable to plaintiff, that Hilles was not regularly residing at the Bend residence at the time of the alleged theft.

Defendant assigns error to the denial of its motion for a directed verdict. The essence of its argument is that the term "regularly residing" is unambiguous and that it applies by its terms to Hilles' status at the time of her removal of the property. Plaintiff does not appear to disagree that the term is unambiguous but asserts that there were factual questions as to whether Hilles was regularly residing at the residence at the time in question; therefore, he argues, the issue was properly sent to the jury.

The parties agreed at trial to the following definition:

"Regularly is defined as steady or uniform in course, practice, or occurrence. Regular is synonymous with normal or typical. The term implies uniformity to some standard or to an established pattern. Regular has also been defined as permanent as opposed to off and on, temporary, erratic, and following no pattern[.]"[3]

Plaintiff reasons that there was evidence from which the jury could find that Hilles was not regularly residing in the residence within the meaning of that definition. We quote his explanation at some length:

"Under the definition agreed to by the parties, to fall within the exclusionary language, a person taking property must reside on the premises as a steady and uniform practice, *and*, the person['s] residency must be 'normal or typical.' There is no dispute that Arlene Hilles had lived on the property for several years and considered the residence her permanent home prior to taking the property at issue under the insurance policy. Hilles['] occupancy of the property was not, however, normal or typical.

[3] That definition was derived from *Webster's Ninth New Collegiate Dictionary*. For purposes of this case, we accept it.

"In fact, Hilles['] occupation of Plaintiff's house was anything but normal or typical. For almost one year before Hilles actually vacated the premises, Plaintiff demanded that Hilles leave the property. In fact, Plaintiff instituted an FED action in the fall of 1991 to force Hilles to vacate the premises. This FED action was initiated after Hilles filed a palimony suit against Plaintiff. In an unusual ruling, the judge stayed the FED action until resolution of the palimony suit thereby allowing Hilles to continue to occupy the house. Therefore, Hilles occupied the house only by order of the court for almost nine months. Her occupancy was against Plaintiff's express objections and without his consent. When judgment on the palimony suit was entered, it was clear Hilles had no right to live in the house or to claim any interest in the personal property in the house. The fact that Hilles was allowed to live in the house only through a court order, and under the express objection of the owner, Hilles['] occupancy was not normal or typical. Therefore, there was evidence that Hilles was not 'regularly residing' at Plaintiff's home.

"To conclude otherwise would allow the insurance company to deny coverage for property taken by squatters and thieves. If the phrase 'regularly residing' is interpreted to mean only continuous and without interruption, a thief or squatter occupying an insured['s] house while the insured is on an extended vacation would also be deemed to be 'regularly residing' on the property. If the thief or squatter walked off with the entire contents of the house, the insured would not be covered under the policy. This interpretation defies the plain meaning of the policy which provides that the policy covers loss of personal property caused by 'theft.' As such, the phrase 'regularly residing' must be interpreted to exclude occupancy by someone for an extended period of time that is not normal or typical." (Emphasis in original.)

Defendant answers, *inter alia*:

"Plaintiff concedes Arlene Hilles' residence at the [insured] residence was steady, uniform in course, practice, or occurrence. Plaintiff concedes Arlene Hilles' residence followed a standard or established pattern. Plaintiff concedes Arlene Hilles' residence was permanent as opposed to off and on, temporary, erratic and following no pattern. Plaintiff, however, argues that Arlene Hilles' residence was not 'normal or typical.'

"As he did before the jury, plaintiff shifts the focus from the facts showing the obvious regularity of Arlene Hilles' *residence* to the facts surrounding her relationship with plaintiff. Only the facts of Arlene Hilles' residence are relevant. Clearly, Arlene Hilles was residing at the [insured] residence when the loss occurred. All of the evidence showed her residence was and had been regular." (Emphasis in original.)

We note initially that we do not share plaintiff's view that the term "normal or typical" in the definition is particularly relevant to the meaning of "regularly" as it is used in the exclusion. As we observed in *Steele v. Employment Department*, 143 Or App 105, 113, 923 P2d 1252 (1996), "it does not follow from the fact that there are several variations of how a word is defined in the dictionary that all of the variations are pertinent whenever the word is used." That observation is particularly apt here. The words "regular" and "regularly" have at least two different and distinct uses. An example of the first is "Joe is a regular guy who behaves in a regular manner." An example of the second is "Joe is a regular consumer of American products." The phrase "normal or typical" would have far more bearing on the meaning of "regular" in the first example than the second, while the parts of the definition that emphasize steadiness, uniformity or permanence would be the ones that bear more on the word's meaning in the second example. The word as used in the second example is not concerned with the way things are or are done, but with their ongoing or recurrent nature. The word is used in that second sense in the phrase "regularly residing," and Hilles' nine-year residency at the Bend house was "regular" under the parts of the definition that are apposite to that use of the word: Plaintiff does not dispute that Hilles' residency was "steady or uniform in course, practice, or occurrence[,]" or that it was "permanent as opposed to off and on, temporary, erratic, and following no pattern[.]"

Because the parties stipulated to a definition of "regularly" for purposes of this case that includes the "normal or typical" component, it is *arguable* that we must apply it, even though it has little or no logical bearing in the context where plaintiff seeks to have it applied. Be that as it may, plaintiff's

argument does not succeed even under the "normal or typical" formulation on which he focuses. The essence of plaintiff's point is that Hilles' residence at the insured house was not normal or typical because, at the time in question, plaintiff was attempting to evict her and she "was allowed to live in the house only through a court order[.]"

Plaintiff's argument *might* be better taken if Hilles had moved into the house very recently and the barrage of lawsuits had begun immediately or soon after she did.[4] However, the events on which plaintiff relies occurred only during the last year of the almost decade-long period during which Hilles resided in the house. Her residence there during the preponderant part of that period was consensual and was, if anything, more uniform, permanent and regular than plaintiff's was.

Against that background, it is not correct to view the court order—as plaintiff apparently does—as the source of Hilles's residential rights or as a major factor in the residential pattern; rather, the order simply maintained the *status quo* by facilitating the continuation of the residency that began approximately eight years before its promulgation. We agree with defendant that there was nothing abnormal or irregular about the *residency*, either before or during the 1991-92 litigation. Rather, it was the *residents* and their relationship in which the abnormality, if such it was, inhered. Indeed, in the context of defendant's policy, it may well be that anticipated situations like this one were among the reasons for defendant's use of the exclusion, *i.e.*, defendant chose not to insure against the risk that one occupant with regular and ongoing access to the other's property would steal it in pursuance of a feud.[5] In sum, as a matter of law, Hilles' ongoing regular residency did not end at the time plaintiff first manifested his desire to end it; it ended only when he achieved his objective on June 24.

Plaintiff concludes his parade of horribles argument by positing that defendant's understanding of the exclusion

---

[4] We emphasize, however, that we do not reach or decide that issue.

[5] It is noteworthy that the exclusion does *not* apply to thefts by "a residence employee."

would enable it to defeat coverage for thefts by "squatters." However, Hilles was not a squatter. She lived at plaintiff's house for almost a decade as part of a relationship that began and remained consensual for many years. A far better illustration of an anomaly that would follow from an argument in this case is that, under plaintiff's interpretation, the exclusion could not apply to thefts by spouses who continue to share a jointly-owned residence during a dissolution proceeding in which the court *ipso facto* might award the house to either party to the exclusion of the other.

We conclude that the exclusion is unambiguous and that the evidence and facts on which plaintiff relies cannot support a finding that it does not apply to Hilles' occupancy of the house through the time that she removed the property for which plaintiff made his claim. The trial court erred by denying the motion for directed verdict and by submitting the case to the jury.

Our disposition of defendant's first assignment makes it unnecessary for us to reach its second. In its remaining assignment, defendant argues that the court erred in its award of attorney fees to plaintiff. That award is automatically vacated by our disposition.

Reversed and remanded with instructions to enter judgment for defendant.