GREATER PARK CITY COMPANY,
a Utah corporation, Petitioner,

v.

TAX COMMISSION, OPERATIONS
DIVISION, Respondent.

No. 970269–CA.

Court of Appeals of Utah.

Feb. 26, 1998.

Gordon Strachan and M. Alex Natt, Park City, for Petitioner.

Jan Graham and Clark L. Snelson, Salt Lake City, for Respondent.

Before BENCH, GREENWOOD and JACKSON, JJ.

## OPINION

BENCH, Judge:

Greater Park City Company (GPCC) seeks review of the Utah State Tax Commission's (Commission) decision denying its claims for a sales tax refund. The Commission ruled that GPCC lacked standing to claim a refund because it was not the taxpayer that paid the sales tax. We affirm.

## BACKGROUND

GPCC is a Utah corporation that operates the Park City Mountain Resort, formerly known as the Park City Ski Area. In winter months, GPCC sells tickets to skiers who ride its ski lifts. GPCC does not permit patrons to use the ski lifts without a ticket. In summer months, GPCC sells tickets for the use of its ski lifts, Alpine Slide, Miner's Park amusement rides, and miniature golf course.[1] Again, GPCC does not permit the use of these facilities without a ticket. Since opening the facilities, GPCC has continually remitted sales tax on all ticket sales.

After this court's decision regarding taxable admissions in *49th Street Galleria v. State Tax Commission*, 860 P.2d 996 (Utah Ct.App.1993), GPCC filed an amended sales tax return seeking the refund of $3,054,-895.36 in sales taxes it had remitted to the Commission on the sale of winter lift tickets from June 1991 through June 1994. In the refund request, GPCC claimed that lift ticket sales were not subject to sales tax as an "admission to a place of amusement, entertainment, or recreation" under Utah Code

---

1. Until 1993, GPCC also operated a gondola. The gondola, however, had ceased operation by the summer of 1993.

Ann. § 59–12–103(1)(f) (1993).[2] The Commission denied GPCC's sales tax refund request, and GPCC filed a petition for redetermination.

GPCC later filed another amended sales tax return requesting the refund of $185,624.79 in sales tax remitted to the Commission on the ticket sales for its summer activities from May 1992 through June 1994. As it had in its previous request, GPCC asserted that ticket sales for these activities were not subject to sales tax under the statute in effect during the relevant period. The Commission denied this refund request, and GPCC again filed for redetermination. The two cases were later consolidated, and the Commission held a formal hearing. In its decision, the Commission held that GPCC lacked standing to request the sales tax refunds because it was not the taxpayer that had actually paid the tax. GPCC now seeks judicial review of the Commission's determination that it was not entitled to a refund.

## STANDARD OF REVIEW

The Utah Code guides our standard of review for Commission rulings:

When reviewing formal adjudicative proceedings commenced before the commission, the Court of Appeals or Supreme Court shall:

(a) grant the commission deference concerning its written findings of fact, applying a substantial evidence standard of review; and

(b) grant the commission no deference concerning its conclusions of law, applying a correction of error standard, unless there is an explicit grant of discretion contained in a statute at issue before the appellate court.

Utah Code Ann. § 59–1–610(1) (1996); *see also South Cent. Tel. Ass'n v. Utah State Tax Comm'n*, 951 P.2d 218, 222 (Utah 1997).

**2.** Because GPCC requests a refund for the period from June 1991 through June 1994, we cite to the version of the statute then in effect. The pertinent portion of that statute read:

(1) There is levied a tax on the purchaser for the amount paid or charged for the following:
. . .

## ANALYSIS

■ The dispositive issue on appeal is whether the Commission erred in concluding that GPCC was not entitled to a sales tax refund because it was not the taxpayer that paid the tax. By statute, refunds are allowed only to the party that actually paid the tax. *See* Utah Code Ann. § 59–12–110(1)(c) (Supp. 1997) (providing sales tax overpayments "shall be credited or refunded to the taxpayer"). Thus, if a taxpayer pays any tax or the Commission erroneously receives any overpayment, the Commission shall (1) credit the amount of tax paid by the taxpayer against any tax amounts the taxpayer owes, and (2) refund any balance to the taxpayer. *See* Utah Code Ann. § 59–12–110(2)(a). To receive a refund, the taxpayer must file a claim with the Commission within three years from the date of the tax overpayment. *See* Utah Code Ann. § 59–12–110(2)(b).

■ GPCC filed amended tax returns seeking refunds of the sales taxes it had remitted to the Commission from June 1991 through June 1994. When requesting these refunds, GPCC claimed that it had erroneously remitted sales tax for "admissions" on its ticket sales. The Commission denied the refund requests, holding that GPCC was not the party that had paid the sales tax. On appeal, GPCC claims it was the taxpayer because it did not print a tax amount on each ticket and it did not collect sales tax from its patrons, choosing instead to absorb and pay the sales tax as a cost of doing business. GPCC further maintains that because it filed the tax returns during the relevant period, it was the taxpayer and is now entitled to a refund of any overpayments. The evidence before the Commission, however, does not support GPCC's claim.

First, GPCC's method of calculating the sales and use tax due indicates that GPCC consistently collected the tax from the con-

(f) admission to any place of amusement, entertainment, or recreation, including seats and tables reserved or otherwise, and other similar accommodations.
Utah Code Ann. § 59–12–103(1)(f) (1993). In 1994, the Utah Legislature amended this statute to expressly tax the activities conducted by GPCC.

sumer and remitted the collected tax to the Commission. At all times relevant to this case, GPCC remitted taxes on its "net sales." GPCC calculated the tax by dividing the gross ticket sales by 1.075 to reduce the gross sales by the amount of sales and resort area tax, 6.25% and 1.00% respectively, resulting in a net sales figure. GPCC reported the net sales figure to the Commission and remitted 6.25% of the reported net amount as sales tax. This method of calculating the sales tax suggests that GPCC collected the sales tax from its customers, and remitted the tax to the Commission. If, indeed, GPCC was the taxpayer and had absorbed and paid the tax itself, the company would have calculated the sales tax liability on the gross sales, or the full price the consumer paid for the ticket. *See* Utah Code Ann. § 59–12–103(1) (1993) ("There is levied a tax on the purchaser for the amount paid or charged. . . .").

Utah law clearly allows a business to "pay *or* collect and remit the sales and use taxes imposed by this chapter." Utah Code Ann. § 59–12–107(1)(a) (1996) (emphasis added). If the business elects to pay the sales tax rather than remit the sales tax collected from the consumer, it must calculate its sales tax liability from the full price paid by the consumer. In this case, GPCC reduced its gross sales by the amount of tax paid by its customers, computed the amount of tax due from the net sales figure, and sent that sales tax amount to the Commission. Although GPCC remitted the collected sales tax to the Commission by filing the tax return and writing the check, the method GPCC used to calculate its sales tax liability establishes that it was not the party that actually paid the sales tax.

The GPCC practice of routinely retaining a 1.5% vendor discount on its sales tax filings is further evidence that GPCC was not the taxpayer. Utah Code Ann. § 59–12–108(3)(a) (1996), provides for the vendor discount: "a vendor who is required to remit taxes monthly under this section may retain an amount not to exceed 1.5% of the total monthly sales tax collected . . . for the cost to it of collecting and remitting sales and use taxes to the commission on a monthly basis."

The statute is clear: the vendor that collects sales tax may retain 1.5% of the amount collected when it remits the tax to the Commission. GPCC's consistent business practice of taking the vendor discount on its sales tax filings confirms that GPCC collected and remitted the sales tax to the Commission. The vendor discount would not have been available had GPCC paid the sales tax because the purpose for the vendor discount is to reimburse the vendor for the cost of collecting and remitting the sales tax to the Commission. *See id.* GPCC's retention of the vendor discount on its sales tax filings therefore shows that it did not pay the tax, but chose instead to remit the sales tax it had collected from its customers.

Finally, GPCC requested and received the investment incentive allowed to ski resorts under Utah Code Ann. § 59–12–120 (1996). Under this statute, the legislature created the Ski Resort Capital Investment Restricted Account. *See* Utah Code Ann. § 59–12–120(5). Ski resorts could request the incentive for certain equipment and improvements to their facilities. The money available to a resort was essentially a rebate on the amount of sales tax collected by the resort from lift ticket sales. Specifically, the statute provides:

> The investment incentive paid out of the account shall be allocated among ski resorts based on the relation between the total sales tax collected from the sale of ski lift tickets in Utah to the total sales tax collected from the sale of ski lift tickets in Utah by each ski resort.

Utah Code Ann. § 59–12–120(2).

GPCC received an investment incentive for $263,541. Again, this statute plainly states that the incentive was based on the amount of "total sales tax *collected* from the sale of ski lift tickets in Utah by each ski resort." *Id.* (emphasis added). To qualify for this incentive, GPCC reported to the Commission that it had collected sales tax from the lift ticket sales. GPCC's current claim that the consumer did not pay the sales tax when purchasing the ticket is in direct conflict with GPCC's actions and representations to the Commission when it requested the investment incentive available to ski resorts.

Accordingly, GPCC's " 'status [under the sales tax statute] is that of a collector rather than that of a taxpayer.' " *B.L. Key, Inc. v. Utah State Tax Comm'n,* 934 P.2d 1164, 1168 n. 2 (Utah Ct.App.1997) (quoting *Bird & Jex Co. v. Anderson Motor Co.,* 92 Utah 493, 498, 69 P.2d 510, 512–13 (1937)). Consequently, GPCC has no standing to claim a refund of the taxes paid by its customers. *See Jenkins v. Swan,* 675 P.2d 1145, 1148 (Utah 1983) ("[T]he traditional test for standing [is that a] [p]laintiff must be able to show he has suffered some distinct and palpable injury which gives him a personal stake in the outcome of the legal dispute."); *see also United States v. Richardson,* 418 U.S. 166, 172, 94 S.Ct. 2940, 2944, 41 L.Ed.2d 678 (1974).

## CONCLUSION

GPCC's regular and routine business practices do not support its claim that it was the taxpayer. Because GPCC did not pay the tax, it has no standing to seek a refund. Therefore, we affirm the Commission's decision.

JACKSON, J., concurs.

GREENWOOD, J., concurs in the result.